We are ready for argument in our first case, Lin v. Holder. Mr. Cox. Thank you, Your Honor. May it please the Court, Theodore Cox for Petitioner Wanrong Lin. This Court's recent precedent decision of Ai-Hwa Chun, where Chun and Lee compels reversal of the BIA decision here, that decision ruled that the BIA had not but must consider documents in that record which are, for the most part, also present in this record, including the 2009 Congressional Executive Committee report, the Robert Lin correspondence. There is an affidavit, a different one, from a person who had been deported to China from Japan, having given birth to two children in Japan. And so the basis of our request for remand is really four square on the Court's decision. The Chun-Ai-Hwa case said that the Department of State was not, quote-unquote, wholly writ, but this Board considers it to be such. Reading right from the Board's decision, it says, we would not consider any challenge to the State Department report absent a retraction by the State Department itself. That is to say, no evidence challenging any conclusion of the State Department could be considered absent such retraction. Well, this case, counsel, is in a different procedural posture than Chun. And this is at least the second motion to reopen. Isn't that correct? Yes, as the regulations allow. Tell us what difference that makes in our ability to review the case. Well, the regulations and the law and regulations, you know, which are quite stringent on motions to reopen, make an express exception for this type of motion based on changed country conditions. So there is no time or number bar as to, with respect to the motion presented in this case. If you can demonstrate the exceptional circumstances, that's what does away with the time and number bar, correct? Yes, that's correct. A change of country conditions, which is what we argued all throughout with the present motion. Is your argument that the Board didn't consider the documents or that it didn't consider them properly, as you put it? Well, in some cases, and most relevantly to Mr. Lynn's case, you know, they said, well, we won't consider documents from other localities. Well, and perhaps I was unclear. Are there documents that have been authenticated that you said the Board didn't consider at all? That's right. There are. And could you elaborate a little on those? Well, we have documents from Mr. Lynn's home county, Lianjian County, and hometown, which is Guantou Town. They're both within Fujian Province. It's in the record. I'd look at 774 and 786, but particularly there are two documents, 774 and 778. They talk about countryside, massive cleanup campaign. Do they affect individuals in Mr. Lynn's situation? Well, they do. Did they not involve women? They are not – those documents don't expressly address men or women. I would like to just point out, if I may, Your Honor, that the Chun and Lynn or Ai-Hwa Chun case was a case involving the same sterilization claim by a husband and a wife. Okay. And they were considered together as requiring a remand in that case. And I appreciate your bringing that up because that's actually another question. I read through every document, and I commend you. This is an incredibly comprehensive job, and I learned so much. I learned that in some provinces it is frowned upon for a woman to get pregnant on her honeymoon because of the stress of the wedding preparations, and that a late marriage is considered one between a man who's over 25 and a woman who's over 23. Yes. And it was very interesting. But I also saw documents indicating that although the policies apply to a Chinese woman, they do not apply to a woman who is a United States citizen, as is the wife here. That's correct. They don't apply to the wife. No, no. I'm sorry. They do not, that the one-child policy is not enforced where the wife is a United States citizen. That's not enforced. It would not be, that's correct, not on the wife. Mr. Lin is not a United States citizen. The wife has said she would go back and bring the child back, and he would still be subject to the family planning rules because he is not a citizen. There is something in the record, actually, about that. How can a one-child policy be enforced against the wife and not the husband? Because the husband has a well-founded fear of sterilization. He would be sterilized because they actually have three children, which is considered an extremely grievous violation. And both have a fear. What is the evidence in the record that the policy would be applied to him as a man, getting back to Judge Duncan's question? Well, the Robert Lin letter, which the Court is familiar with, I believe, is about a man sterilization inquiry. We have our guy, Chun Fujin, deported from Japan, male, sterilized. That is the record at 101. Where were those events? I beg your pardon? Where were those events? Where? Yes, where in China? In Fujian. It's a Fujian case. Chun Fujian is a Fujian case, as I think was the Yuan – there was a similar case in the Chen Aihua case, also Fujian, same locality, same province. And there is – this is a good question, Your Honor, and I don't mean – and I do want to address it. The 2007 profile itself says on 264, one of the couple must be sterilized. And there is a male sterilization record in the record at 296, the Chinese Information Center. And, of course, the 2007 profile was before the Court when we affirmed the board on the first attempt to reopen. It was, Your Honor, yes. So that's really unhelpful in that it's not new, it's not newly discovered, and it is also, from our perspective, the law of the case, is it not? Well, it would be, but for the Court's precedent decision, I think I looked at that, the U.S. v. Aramoni, I think, at 166 F3rd 655. If there's an intervening controlling authority that is applicable to this issue, then that would take precedence, and I argue that that principle applies here. Certainly, the 2009 CEEC report, which the prior panel, I know Your Honor was on it, had said was not persuasive in this case. I think that's reversed by this decision and that the Court should follow that precedent and find that the board failed in this case as well to properly consider the 2009 CEEC report. And, Your Honor, I would also note that the need— Well, is it your argument then going back in time that in the original decision from this Court and leading up to that that that decision was wrong and that the board failed to consider the 2009 report? I thought that was a distinction in Chen that that panel determined that the 2009 report wasn't considered, but I thought that was before the board and the Court in the prior case, in this case. Well, it was before the Court. The board, I think, in Chen Aihua said the board didn't properly consider the— they found it compelling contradictory evidence that the board should consider. Why didn't the board properly consider it in this case before, the first time? What tells us that that—seems like to me that's a distinction with Chen, that that panel of the Court was saying, well, the board didn't properly consider it, but this Court's already considered that issue. I wasn't on the panel, but the other two judges were. Yes. They already considered that issue once before, which would seem to negate the applicability of Chen. Well, that's if—I mean, normally the law of the case, I would agree with you, but for the intervening precedent decision that I argue is over—on that issue should be controlling. Is it your position that Chen mandates reopening whenever the BIA defers to the 2007 document? Yes, I do. It should, because the 2000—where the record supports an appropriate challenge to the document, as I believe it does here, we have the Robert Lynn, we have the 2009 CEEC. We have—and, Your Honors, I mean, I do point to we have so much documents from the local town, Guantanamo Town. This person is from Guantanamo Town, and we're saying that those documents were not mentioned by the board. Well, that's different than saying that the result necessarily would be different. I thought your argument is primarily that the board failed to thoughtfully consider these new documents and arrive at a reasoned decision. A reasoned decision could still result in the board rejecting this claim, don't you think? Well, but they have to give reasons. I agree with that, but that's different than saying that inexorably the result must be different in this case. Yes, I would be happy for the board to give reasoned consideration to the documents in this case, which they have not so far. The board noted it apparently did some analysis, though, because it noted, for instance, that much of the evidence, and this is true, much of the evidence is the same as that that was initially submitted, that most of the documents from China had not been properly authenticated or described conditions in provinces in which Lin did not live or show conditions that would not materially affect his claim. It isn't that, drawing on Judge Diaz's question, it's not that the board didn't consider them, it is that the board reached a different outcome based on its consideration of what was in the record, it seems. Well, I mean, there's a precedent that says the board should consider documents from the same province, even if it's not the exact town, that's JHS. Is consideration the same as crediting? Well, it goes to the authentication issue, and in this case, Your Honor, we sent all of those, well, call them government or internal documents, we sent them to the consulate in Guangzhou and sent them to the Fujian Province Foreign Affairs Office. These are the two ends of the so-called chain of custody. We made every attempt that I could think of to authenticate those documents, and the board simply noted that, well, you sent some documents around. I mean, I don't see that saying that we sent some documents around is a proper consideration of, well, is it a clear attempt to authenticate with the right authorities? They didn't even talk about authentication in terms of addressing what we did. Well, as I understood it, it was obvious that you did put a great deal of effort into seeking authentication. The board simply noted that you had not achieved authentication of the documents, that it rejected for that reason. Well, it does note that, but I don't why is the prior board said, well, you didn't do anything to authenticate, and then we did everything possible to authenticate, and then where is the line? Then you've done enough to show authentication. When, in particular, those documents completely hand-in-glove match what the CEEC report talks about, the target management system, and they are of a piece of how coercive the policy actually is. Thank you very much, Mr. Cox. You have some time for rebuttal. Thank you very much. Ms. Carmichael? Good morning. May it please the court, Amy Carmichael for the government. The question before the court is whether the board abused its discretion in denying Petitioner's second untimely motion to reopen. So if this was Mr. Lynn's first motion to reopen, would CHIN require a remand? I don't believe that it would. The question, it's not just whether it's the first motion to reopen, however, it's also whether it's timely. So for a timely motion to reopen, he still is required to present new or previously unavailable evidence demonstrating prima facie eligibility for asylum. But in an untimely or number-barred motion to reopen, he must meet those same requirements, but additionally demonstrate materially changed country conditions. Now, with regard to the CHIN case, I think that there's two things that make this case clearly distinguishable based on the procedural posture. The first is that in CHIN, the petitioners were only required to demonstrate a likelihood of persecution. Here, he has to demonstrate, in addition to that prima facie eligibility for asylum, changed country conditions. And it's that point that would be different, even if it were a timely motion to reopen, because for an untimely motion to reopen, it's that changed country conditions that's that additional burden. Can you, where does the fact that CHIN was found credible and Lynn was not factored in, if at all? I think that the place, I think there's two places where it factors in. The first place is with regard to evidence that has not been authenticated. Having not authenticated the evidence, he's, and having not been found credible, it's just an additional reason that the board is. He doesn't get the benefit of the doubt. Right. The other point is that the board has broad discretion to deny a motion to reopen and indicated in matter of S.Y.G. that it wasn't particularly inclined to exercise that discretion in favor of an alien who has previously been found to offer incredible evidence in support of their applications for relief. Now, the board did not make that explicit finding here, but it's just something to keep in mind. The board has that broad discretion. Right. And credibility factors into that. Thank you. Discretion, though, assumes considered judgment of the evidence. And petitioner's claim is that with respect to new evidence that was not previously before the board, the board simply said nothing about that evidence and that we should, as a matter of law, require the board to exercise that discretion meaningfully by discussing the evidence, even if the result might eventually be the same. How do you respond to that? Well, first of all, the board is not required to parse and refute on the record every piece of evidence that the petitioner submitted. The board acknowledged the evidence as a whole that was submitted and made a number of made a number of observations. That indicates that the board was reviewing the record as a whole. The board made findings with regard to the likelihood of persecution, including the fact that even though China may regard the children of returning residents to be residents of China, that that was not specific to demonstrate that Lynn was likely to be sterilized. Looking at the looking at the evidence and the record that he submitted as a whole. Again, the vast majority of that had been submitted previously and was previously analyzed by this court and found to be insufficient to justify a motion to the motion to reopen. Are you at all troubled by the fact that some of the language in the BIA's opinion seems appears to be a paste and cut job from other cases? Well, I think that there's one of the problems is that in the in a number of these cases, all of the same documents are submitted. So the board addresses all of those same documents the same way over and over in these cases. So I don't think the fact that it's, as you say, a cut and paste job necessarily undermines the board's findings, because the board's examining the same evidence and drawing the same conclusions, that the evidence does not does not support the finding that country conditions have gotten significantly worse or that individuals returning with U.S. citizen children are likely to be sterilized. Is it enough for the board to simply say that this petitioner will not be subject to sterilization in light of this new evidence without any analysis of the evidence? Is that enough? Because that's what happened with respect to at least some of the some of this new evidence. I think in the context of a motion to reopen where the board has that broad discretion provided the evidence to support that conclusion, I think that's a fine finding for the board to make. That would require us to come to that conclusion. We're not supposed to reweigh the evidence. We're simply required to consider whether the board meaningfully exercise its discretion. Right. Provided that there's provided that the record reflects that the board did meaningfully review the record. How is that? How can that be the case if all they say is we disagree? Well, I don't think that's all the board said in this case. The board clearly had gone through the record and looked at what the documents are. They list out many of the documents that were submitted. They point to specific pieces of evidence in support of some of those contentions. So I don't think that it's fair to say in this case that the board was clearly not doing its job and exercising review. Looking at those documents, most of the documents talk about specifically women and he's not a woman. And it talks about what happens when two people who have children in the United States, neither of whom have status. And that's also not the case here. So the evidence just doesn't support the conclusion that he's asking us to find. Now, there's some other decisions from our sister circuits that seem to come to the opposite conclusion that you would have us arrive at here. What is it about this case that makes it different? I think that those cases are also distinguishable, partly because of the timing of the case. For example, if you look at the Ji Cheng Ni case, the original board decision in that case was from 2004, and the motion to reopen was filed in 2011. So unlike the case here, documents from 2007, 2008, and 2009 were new and previously unavailable. But at this point, his case was initially decided in 2009, and he filed a motion to reopen that was decided in 2010. So even if we credit the documents from 2007, at most what that's demonstrating is that conditions were worse than believed at the time of his original hearing. It doesn't demonstrate that conditions have appreciably changed since that time. And that's what he has to prove now. Sorry. I'm sorry. What do we make of the fact that Lin's wife is a United States citizen? That's an unusual factor that I saw referenced in several places when I was going through the data, and I did not see anything that addressed that circumstance. Am I missing something? No. I believe that because she's a United States citizen, her children are in a different position than those who are returning when they don't have any status here at all. What is the difference with respect to Mr. Lin's possible sterilization? Well, there are documents that suggest that she would be exempted, and I don't see why if she's exempted he would not also be. But the evidence isn't clear on that point, and that's part of his problem. Well, but, I mean, if one spouse is exempted, if, in fact, China has increased its policy or begun to enforce its policy, wouldn't that lead to the logical conclusion that the other spouse, the Chinese national, would be the one subject to sterilization? But if his spouse is exempted, and it's ordinarily exercised against women, it's normally, this policy is usually, the way the policy is usually carried out is through forced abortions and through the sterilization of women, not of the men. Well, you say usually, but that doesn't... But, again, because of the procedural posture of this case, he has a very high evidentiary burden to overcome. And the fact that the record doesn't clearly demonstrate that he's likely to be subject to this policy at all because of his wife's citizenship in the United States, he has not met that burden. Did the board... I'm sorry. Did the board come to that conclusion with respect to first nationality and with respect to the sex of the particular spouse? The board did make findings that he was not likely to be sterilized. And this court, in its previous decision, found that part of that reason was because he was, in fact, a man. I took counsel to have made a representation about new evidence in the record since this court's last decision, this motion to reopen, that there were documents from males who had come back to this province and who had been sterilized. Is that... Am I reading that correctly? I believe that one of the main documents that's referenced is the Lynn document, where the man is returning from Japan. First of all, that instance is distinguishable from here because in Japan, the children are not given Japanese citizenship by virtue of being born in Japan, whereas his children have United States citizenship. But also, that document was previously before the court, and this court found that it was insufficient to support his motion to reopen. Unless the court has any further questions. We believe that the court should deny the position for review. Thank you. Thank you. May it please the court. Peter Cox again. If you would speak into your mic. Thank you. Thank you, Judge. A few quick points. One of the things that is the uncredibility. You know, the immigration judge expressly bifurcated her credibility, adverse credibility finding. I mean, he had claimed that when he was in the fourth grade, his father, he was arrested because his father was himself subject to a family planning search and wanted for some procedure. And the judge found, well, the father could have testified, and he was available. But what's important is that the judge bifurcated that adverse credibility finding expressly in the record. It's 21, 62, and 3. Said that that part of the claim, I am finding not credible. And then she went on to separately address the other part of the claim without any reference to that part, which was not credible. So there should not be an application of any lack of benefit or doubt, I believe. Can you speak up a little more? I'm sorry, Judge. Yes. I'm just to repeat that there was a bifurcation of the adverse credibility finding at the IJ level, and the board never brought that up in any decision subsequently about that. And I do want to point to one important part of the record since the wife status has come up, and that is I think at 406. It's one of these Internet government websites, the happy family website. And the specific inquiry was from a male whose wife was not a citizen but a legal permanent resident. So that would be in the same lawful status category. And that document says that, without exception, you must be subject to sterilization. And this is a document for which there is a verifiable website, and the document is at 406, and the index gives the website. So this record does support the objective basis of his fear of persecution if he's sent back. And if there are no more questions, then I'll rest on the brief. Thank you very much. Thank you very much, Mr. Cox. We will come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, G. Steven Agee, Albert Diaz